Good afternoon and may it please the court. My name is Sarah Fahlman and I'm honored to be here today to represent the appellant, Sarah Fox, a hard-working fire lieutenant who was fired a mere day after her employer learned that she had finally contacted an attorney to help her address the gender harassment that she had been facing for more than a year. Lieutenant Fox brought four claims below, two under title 7 and two under section 1983, and I'm here today to rectify some of the grave errors made by the district court in granting Leland Fire and Rescue's motion for summary judgment. First, the district court erred by going beyond its authority and acting as the jury, improperly weighing the evidence and making credibility determinations in Leland Fire and Rescue's favor. But I'm also here for another reason. I'm here because under the district court's decision, it will be nearly impossible for a plaintiff to take a title 7 retaliation or harassment claim to a trial unless there is evidence that the employer affirmatively admits they're acting unlawfully, and this, we know, will never happen. The errors made by the district court are particularly problematic in a case like Lieutenant Fox's. As this court is aware, title 7 has the broad remedial purpose of rooting out the cancer of discrimination, and this is a purpose that is particularly true in the context of retaliation. But what evidence was there here that the actions he took were gender-based? And that is turning to the hostile work environment claim, and what Lieutenant Fox put forward in her summary judgment brief were a plethora of facts, facts that the district court acknowledged that made her different than how she was treated. Disrespectful conduct doesn't necessarily make it a hostile workplace. I'm sorry, can you repeat that? I said disrespectful or hot or or disagreeable conduct doesn't necessarily make it a hostile workplace, as you know. Well, what the Supreme Court has instructed that courts should do in the on-call decision in 1998 was to look at the treatment from the perspective of the individual. So what is the best evidence in support of your hostile work environment claim being based on her gender? The best evidence is that her fire chief and other staff allowed the members of her shift to continuously both disrespect her and avoid the chain of command. And why this is important is because firefighters... But how do we know that is because of her gender and not just because of her poor leadership or skills as a lieutenant here, which are also in the record? Her poor leadership skills are disputed by both Lieutenant Fox as well as some evidence and admissions from the defendants. But what we have here is simply the difference between how she was treated and how male lieutenants were treated. Now that the department... Just because she was a female? Because if that's the case, then anytime there is a single female and all the rest of the managers are men and someone doesn't like the way she manages or works, then she has a claim because she's a female. So you have to tie it to her gender somewhere, I think. Well, I understand that and with all due respect, it is more difficult in a situation where Lieutenant Fox is the first-ever female lieutenant. So we have no evidence that other female lieutenants were perhaps treated similarly. But when she is the first-ever female lieutenant, though, you would think the record would be more replete with indications of their hostility toward her because she is a female. I mean, you do have the one... Actually, you have two statements. One where they referenced her plumbing and another where they said females don't make good lieutenants or something. But that's two instances over a one-and-a-half-year period. And those were two instances that occurred very near the beginning of her tenure as lieutenant and that the fire chief allowed to foster and allowed to, you know, percolate throughout the department, which led to immediate disrespect. And one thing that is different is the... Judge Becker started out asking you what your best evidence is. Is that your best evidence? The best evidence is the fact that the fire chief allowed her subordinates to bypass the normal chain of command. And this may not sound like a big deal if you're talking about an office setting, but this is where the Supreme Court's decision and on-call becomes important. You have to look at it from the perspective of the plaintiff. Lieutenant Fox runs into burning buildings with her subordinate officers. Her superiors have allowed them, have fostered an environment where they are allowed to disrespect her, not answer her orders, work around her. And so what she has is she has a fear and it's a legitimate fear every time. But she doesn't have a constitutional right to have her subordinates respect her if they don't have any confidence in her. There's no... That's not what the case is about. The case is about whether or not the department stepped in and they knew she was being treated differently. They knew that it was affecting her work situation. And the fire chief admitted that he did not want to step in because he didn't want to make it worse for her. And this all stems from the beginning when she became the lieutenant and rumors began to percolate that the only reason that she became lieutenant is because she was female. And the fire chief refused to step in and stop that from happening. And so what happened is it created this environment that she had to work in day in and day out. Well, if her co-workers perceived that she had received a promotion because she was female, is that perception evidence of gender discrimination? What that... The perception that she was... If she was treated differently and we submit that the facts demonstrate that she was because... Let's go back. Let's go back. What you stated as the fact was that it had been said that she got the promotion because she was a female. So what I'm asking is if that was the perception, right or wrong, by her co-workers that that's why she got the promotion. Is that perception evidence of gender discrimination? The perception is evidence of gender discrimination because of what it led to. It led to her inability to manage her shift because her subordinates refused to follow her orders and her fire chief refused to let her discipline them for that failure. And so because of the fire department's actions, she was not permitted to lead as a lieutenant. And that was solely because of the fact that her subordinates did not like the fact that a woman was now telling them what to do. And she's been... Her assistant chief, who is her immediate supervisor, testified that as a lieutenant he learned things from Lieutenant Fox. He thought that she did very well taking orders from her management came from the very individuals that she had accused of gender harassment. And I think that that is telling and that ties in with the retaliation claim. And if you wouldn't mind, I'd like to switch, unless you have any other questions about the hostile work environment claim, I'd like to focus a little bit of my time on the Title VII retaliation claim. Here, the district court erred when it ignored all of the evidence Fox put forward that showed that the justification for the department's actions was that she was this poor performer. And these errors are egregious and they are throughout the record, where the district court claims that it's undisputed that she was a poor performer. Well, what the record actually shows is that her own superior officer never saw a single act that was complained of. He worked right down the hall from her and was in charge of monitoring her. Did you have a question? No, go ahead. And there's additional evidence that is probative of pretext that the court also ignored. For example, suspicious circumstances can be very probative of pretext. And here we have an individual who finally said, I am going to contact an attorney and I am going to attempt to address gender harassment for both myself and my other fellow female firefighters. The very next day, not a month later, two months later, the very next day, that fire chief went before the board and said, we need to fire Lieutenant Fox. And that alone can be evidence that is probative of pretext. And the district court brushed that evidence under the rug. The other kind of evidence that the district court ignored, erroneously ignored, is dishonesty. And this court has held in the Dennis case that dishonesty about material facts can be probative of pretext. Here we have the fire chief who has essentially admitted that he lied about seeing her complaints of gender harassment. He told the EEOC coordinator that she was insubordinate and that's why she was fired, but then admitted during a deposition that she actually didn't do anything insubordinate. He lied during his deposition when he said that her assistant chief told him that she had bad performance in December. Well, in his deposition he said, wait, I never even talked to me about it. And so that dishonesty should have been addressed by the court and it was in the record and was simply ignored. Another thing that the court ignored were the impact of the post hoc explanations. And here the defendant in their summary judgment brief added on some things that maybe would support a finding that she was an alleged poor performer. Well, notably not one of those documents was in evidence or in evidence at the time that she was fired and they admitted that it played no part in it. And so to add those after the fact appears to be just a way to pad the record to make everybody feel good that maybe we got it right after all. And finally, what is really telling is that there is not one instance in her personnel file that shows poor performance. The defendants couldn't identify a single task that had ever not been completed and they never wrote anything down to put in her personnel file. And all of those are undisputed facts that were in the record and that the district court ignored in its decision on pretext. And if you wouldn't mind, I'd like to hold the remaining time. Oh, I have, I'm sorry, let me keep going. And so under these facts, it would be. You don't have to. No, I'm going to keep going. Under these facts, it would be impossible for a defendant to have actually fired you because you filed this complaint. And that just, it simply isn't going to happen. What the question should be is whether Leland Fire and Rescue presented evidence such that no rational fact finder could conclude that its decision to terminate Lieutenant Fox was because she submitted a formal harassment complaint and notified them she was contacting an attorney. And that any reasonable jury could look at and find that the actual reason that Lieutenant Fox was terminated was because she notified the fire chief that she was going to take action. And the fire chief was similarly notified of that by another firefighter and he did not want that to occur. And so for those reasons, I think that this court should overturn the district court's decision on the Title VII retaliation claim. And on a related note, the First Amendment retaliation claim should be addressed under a slightly different standard, which the district court failed to differentiate between cases. Retaliation cases brought under 1983 don't require the kind of like, but for Nassar analysis that Title VII claims do, all the plaintiff has to demonstrate is that the complaint or the protected activity was a substantial or motivating factor. And here, given the same evidence that I, I'm sorry? The First Amendment activity was when she wrote the complaint to her fire chief setting forth her belief that the department was engaged in gender harassment. And in that complaint, she requested relief for the department as a whole. And when she spoke with her coworker, she said that she would be filing the complaint on behalf of herself and other female firefighters. Generally, these First Amendment cases like that are pretty rare and there usually has to be some sort of a item of public concern and a public forum. And here it looks like it's just a, an employment dispute, which may or may not be related to gender, but it's hard to see as it goes beyond being just employee or employee. What you have to do in these sorts of cases is look at the forum content and notice. She wrote directly to her fire chief and assistant fire chief stating that there was gender harassment going on in the department and that the department needed training. It is at least likely that the community as a whole would be interested in whether or not the fire department was allowing gender harassment to go unchecked. But she didn't just stop there. She started talking to other fellow firefighters about her claim and was prepared, and this is what triggered the fire chief's actions, was prepared to file an EEO complaint with an attorney addressing gender harassment. Harassment that went beyond what she herself witnessed, but also dealt with the other comments that she had heard. For instance, when a female firefighter was referred to as a hooker in a meeting and that was not, that individual was not told that that behavior was inappropriate, as well as some other actions that she had observed. So it does go beyond her personal employee grievances and gets into matters of public concern, which is making sure the taxpayer's money does not fund a fire department that permits gender harassment to go unchecked. And so for those reasons as well, the district court's underlying decision should be overturned as to the First Amendment retaliation claim. And if you have nothing further, I will now reserve my remaining time. Thank you very much. Thank you. Mr. Derrick. Good afternoon. It may please the court. I'm Paul Derrick, representing the defendant appellees in this case. Judge Flanagan got the decision right for reasons that we can discuss and it's briefed by us. Sarah Fox was a good firefighter and a good paramedic. No one has disputed that. Chief Grimes recommended hiring her. He recommended promoting her. Recommended promoting her over an equally capable male applicant for that job. When she became the lieutenant, and I believe it's in the records, I just want to correct one thing that counsel just said, that she was the first lieutenant in the department. That's not true. She was the first paid lieutenant. There was a volunteer female lieutenant already as part of the department, but she was not a career lieutenant. So Ms. Fox was the first paid lieutenant who was a female. Once Ms. Fox became a lieutenant, however, everything changed. The old adage, you know, sometimes a good Indian does not make a good chief spills over into this case. She was not a very good supervisor at all. She couldn't lead well. By her employee's complaints, sat in her office, fiddled the day away, didn't help with chores, didn't participate with training. Where is that in the record in her personnel file? It is not necessarily in her personnel file. You are correct. It's not there at all. From June 10th to January 2nd or 3rd, when she was ultimately fired, there's no indication of any problems with her work. And in fact, even after her evaluation, she was put on 90 days probationary period, at which point she was supposed to be evaluated again and talked to again about it. And that didn't even happen. You're correct. It did not. You're correct. So why isn't a jury entitled on the retaliatory claim to view the fact that none of that is in the record, but what is in the record is the day after she finally filed her complaint, they fired her? Sure. Why isn't that a jury decision? Sure. As the district court pointed out in her decision, and we point out in our brief, the law of this circuit is established that just because something isn't documented in the record doesn't mean it can't form a basis for action that's taken later. And the subsequent backfilling, as it's been called in this case, isn't evidence of pretext or isn't evidence of bad behavior that somehow caused the real reason into question. What about the backfilling of Mr. Grine's stated reason for why he fired her? Because in his affidavit two months after he fired her, or in his affidavit to the record, he didn't mention that. It's only four years later when his wife comes up with this in her affidavit. Why shouldn't a jury be able to consider that dispute in the record to determine that maybe, or maybe not, to consider the retaliation claim? That's a fair question. And with all due respect, Your Honor, I don't necessarily see that it has to be one or the other. I believe, and I don't have the quote in front of me from Mr. Grimes, what he said was, I made the decision over the holiday period that I was going to terminate her. He had a meeting with her on December 1st of 2010. Sometime within the next week, his wife said, whether it was that day or within just a few days thereafter in her declaration, she says, he told me that he was going to go ahead and fire her unless she makes some miraculous turnaround. Then they went on vacation until January 2nd. He says in his deposition he made the decision over the holidays. His deposition was years, years after the decision was made. His affidavit to the EEOC, which was made three months after the termination, says zero about making a decision over the holidays. So there is a dispute in the record there, isn't there? Again, I don't necessarily see the silence of one document as being an indictment of the other document. I don't know. An affidavit to the EEOC is probably the most important indication. Certainly that would have been something he would have mentioned in the affidavit to the EEOC of all places a few months later. I am just saying that there is a dispute in the record. I disagree with the word dispute, but I understand where you are coming from. Wouldn't that lead at least to a credibility judgment that you can't make a summary judgment? Which part specifically, Your Honor? You have arguably two different versions leading up to the firing decision, putting aside the timing aspect of it. Wouldn't the difference in those two versions be something that the trier of fact, which in this case I assume would be a jury, would be entitled to consider in their credibility determination of whether or not they believe the fire chief and his wife, if she were a witness? Again, I don't necessarily see what he said and what she said as being in tension with each other. He doesn't specify a particular time period in which he made that decision, except broadly over the holidays. Again, I don't know when that is based on what was in his mind at the time. His wife said it was sometime after the 1st. They went on vacation the next week, so it had to be before that. Then they didn't come back until the 2nd of January. At some point in that first little segment, he told his wife, I am tired of dealing with this. I am just going to fire her. Wouldn't the plaintiff be entitled to argue to a jury that when you then bring in the evidence of, I went to see the lawyer on Monday, they fired me on Tuesday, that that relates to the credibility of the explanation of the fire chief and his wife? Not necessarily, Your Honor. Your Honor, in a case that you actually wrote the decision on, the Moducraft case several years ago, Walker v. Moducraft Homes, you made the notation in that decision. It is right here. Talking about an employer that had already made up its mind to fire an employee. You said mere knowledge on the part of an employer that an employee it is about to fire has filed a discrimination charge, or in this case has seen a lawyer and is about to file a discrimination charge, is not sufficient evidence of retaliation to counter evidence of legitimate reasons for discharging the employee. That's the situation we have in this case. Once he had made his mind up, and he told his wife about it, and there is no evidence to the contrary about that. But whether he made his mind up, isn't that a factual issue of a dispute? That he made his mind up? I don't believe it is an issue in dispute as to a relevant matter. For all the reasons Judge Thacker mentioned, couldn't a reasonable jury conclude that he made his mind up after he learned that she had engaged counsel based on this record? The only evidence that's in this record... that actually is in the record is his statement to the EEOC and in his deposition that he made the decision over the holidays, whenever that was. Admittedly, the notice that she had engaged counsel, the last email saying, I've gone to counsel, Kelly Gore coming in saying she went and got a lawyer, that all happened after the holidays on January 2nd. So any decision he made, whether it's his story, his wife's story, had to be prior to that. Just by the timeline. Well, that's certainly grist for the final argument, but based upon the conflicting evidence here, don't you think a reasonable jury could conclude otherwise? I understand your question, but I honestly don't, Your Honor. By all accounts, she, being Ms. Fox, was not a good supervisor, and she gave a litany of reasons in support of her contention that she was harassed, discriminated against on an ongoing basis. They included everything from her computer logon not being given to her, although she admitted that she was given a different logon to use, that she never had problems logging on to the computer and it did not stop her from doing her job. She also said, let's see, I didn't get along with some of the members on my shift from the start. I don't know that it was my gender, just personality conflicts, I think. I inherited that disrespect when I inherited the shift. That's in the record at Joint Appendix 194 and 95. Are you addressing the hostile work environment claim here now? Yes, I'm sorry. If you want me to stay on the retaliation, I will. No, I just wanted to be sure. I'm sorry, I shifted gears. Because that's, as you know, everything you say may be correct, and it may negate the hostile work environment claim and the First Amendment claim. But a plaintiff can lose those if there is independent evidence in the record to indicate that the change in employment status was based not on any of those considerations, but on the fact that there was a complaint filed. That's correct. And just to stay back on the retaliation aspect then, Your Honor, Ms. Fox, Lieutenant Fox, made the same complaints, essentially the same complaints, with very few variations over a period of seven months, beginning back in the summer, late spring and summer, before her termination. And I'm not saying it was coincidence. Maybe it was, maybe it wasn't. But those complaints seemed to coincide with the times where she would get reprimanded for not doing her job, not getting control of her shift, et cetera. That is in the record. Repeating the same complaints, the same gripes over and over, doesn't make them matters of public concern. It doesn't make them necessarily any more protected. When they've already been looked into and the same conclusion is reached by Chief Grimes in this particular instance, you're not doing your job. You're saying your employees aren't behaving, they aren't listening to you, they're not doing what you told them. Discipline them. She admitted, I never disciplined them. She admitted that she had the authority and responsibility to discipline her employees and she never once did. What Grimes did is that's an interesting argument for your client to make since he had the authority and the responsibility to discipline her. And from June 2010 until termination, he didn't. He didn't even follow up on the evaluation and probationary period. Now, beginning in June, he put her on a performance improvement plan, put her on probation for 90 days over that same kind of conduct. At the end of that 90 days, no further disciplinary action was taken against her. So that's correct. At that point, and again, I'm not sure if this is, I'm paraphrasing. I think it's in the record. I'm not going to swear to it. I believe the way Chief Grimes described it was I just decided I was trying to mess with her, essentially. She wasn't learning. She wasn't doing what I told her to do. And a good example of that is at the December 1st meeting they had after the shift meeting when they had the employees come air their gripes about her, et cetera. He told her in the after meeting where he and Chief Hayes met with her, prepare a roster of assigned duties for your shift every day. Here's who's assigned this. Here's who's assigned that. If they don't do it, hold them accountable going through that roster. She still didn't do it until a month later, four days before her termination. That was when she finally got around to it. That was the problem with her. She would take direction. He also told her in that meeting, or at least there's perhaps disputed, but he also told her in that meeting he had no intention of terminating her. That is disputed, yes. So we just have to accept her version of that for right now. That's correct. The complaints the plaintiff made, and the record is replete with them, at least in our brief we cite to the record on that. She said she could not link these complaints to her gender. She said, I think my employees may not have liked me. For what reason, I don't know. I thank my Lieutenant Hunt. I don't know if he liked me or not. I don't know why he didn't. I can't say any of it was because of my gender. She couldn't link any of the complaints to her gender. She couldn't link any of the complaints to retaliation for engaging in any protected conduct. Again, the only intervening cause that may cause anyone to say, what about this, was her email on January 2, 2011, right before her termination, which, again, was one in a string of complaints. And by all accounts, the decision to fire her had already been made. Under the Walker v. Mongercraft case, she could have made six more of those complaints, but once the die was cast, it doesn't change the fact that it's not retaliation to go forward with the termination that you already made your mind up on at some point prior to that, whether it was a week prior to that, two weeks prior to that, three weeks prior to that. At some point, both Chief Grimes and his wife don't dispute. There's no conflict there. At some point prior to January 2, the decision was made to get rid of her. And so from that perspective, the retaliation claim should not prevail. In terms of the First Amendment speech argument as far as the retaliation as to that, the Brooks v. Arthur case here from the Fourth Circuit is very instructive because in that case, the plaintiff was a lone black lieutenant in the department as opposed to the lone female lieutenant. He made similar complaints to those that Ms. Fox made in this case. And Judge Wilkinson in his decision went through and made it very clear that unless there are broad matters of public policy being complained about, not just individual workplace grievance-type conduct, it doesn't rise to the First Amendment level of protection. Specifically, you look at the forum, whether he's complaining in public, whether he's complaining in private, or in this case, whether she's complaining in public or private. Also, look at who's being complained about. In this case, virtually all of her complaints are about me. My employees don't respect me. My employees won't do what I tell them to do. It's very individual-oriented versus group-oriented. I analogize it to sort of in the National Labor Relations Act context, individual activity versus concerted activity. And it's not an exact analogy, but it's fairly close, I think. In that case, they distinguished Campbell, which plaintiff relies on in her brief, Campbell v. Galloway, another Fourth Circuit case. In that case, the court decided that a complaint about sexual harassment was protected by the First Amendment, but the facts of that case are vastly different from this case. In that case, you had- If Ms. Fulman says that her client was going to complain about systemic discrimination against females within the firefighting service, wouldn't that make it arguably a matter of public concern? If she had actually done that, it might. But again, one, it was an after the fact. The decision to terminate her had already been made by the time that came along. But two, even if you back that threat of complaint up before the decision was made, just because somebody says they're going to complain about it until they actually do it, everything prior to that had just been about me. My employees won't respect me. My employees don't obey me. My employees- It's all about me, me, me. There was no concerted nature to that. Asking for department-wide training is not necessarily the same thing as complaining about a department-wide problem. And in the case of the Campbell v. Galloway decision, there was a lot worse conduct than that, than everyone on here. There was conduct toward not only the plaintiff, but other females within the department, members of the public. It was a whole different ball of wax than what we have here in this case. In this case, we have Lieutenant Fox complaining about, again, I keep harping on it, but my employees don't like me. They don't respect me. They don't listen to me. They don't obey me. On that basis, it's really hard to say that her complaints rose to any First Amendment level of protection, and therefore the First Amendment just doesn't cover that conduct. It becomes simply a workplace dispute, and this Court is not where one settles that kind of dispute. Nor does it matter that there have got to be a lot of complaints by Lieutenant Fox every time. Just because there are a lot of them doesn't mean that it suddenly gets First Amendment protection behind it. I can't say it any better than I wrote in our brief. I could just sit here and regurgitate the brief, but you don't want to hear that. If there are no other questions, I'll sit down and be quiet. Thank you very much. Thank you. Ms. Fallman, you have a little time in rebuttal. Thank you. I want to first talk about this idea that the die was cast and that the decision had been made long ago that he was going to terminate Lieutenant Fox. There is simply no evidence in the record, no undisputed evidence in the record that that was indeed the case. It is telling that when speaking to the EEOC coordinator, the fire chief never thought to mention this alleged conversation that we had with his wife, who was also on the board of the fire department, which is another defendant in this case. In fact, even if he had thought about potentially terminating Lieutenant Fox at some point, if the complaint she submitted put him over the edge, that satisfies the but-for causation necessary, as this court found in the O'Cauley decision from 2011, where it says, even assuming Stewart had previously contemplated firing her, her complaint may have been an additional or superseding cause of her ultimate termination. And so even here, if the fire chief had been percolating on it and had just had made no decision until he got that complaint and then thought, I'm going to evidence in the record that he shared that intention with anyone besides his wife, assistant chief, the two captains, anyone else? There is none. And as a matter of fact, during his deposition, he claims that he called the assistant chief after he returned from vacation and the assistant chief said the problems have continued. Notably, during the assistant chief's deposition, he said that call never happened. He never spoke to the fire chief about it, and he observed no objectionable behavior by Lieutenant Fox during the month of January, nothing that would warrant a termination. And I want to now address the point that she never followed his orders following this December 1st meeting. That is frankly not supported by the record. During the meeting, the fire chief suggested making these lists. Lieutenant Fox testified that she did so that very next day, and the fire chief admitted in his deposition that he never even followed up to see. So for him to say she never did it is frankly very disputed, as Fox is the only one who has come forth with evidence saying, I did do it. They crumpled them up. And the fire chief never bothered to even verify whether or not she did them or not. And going on to some of the questions that Your Honor, Judge Thacker asked, it is telling that from the time she was put on probation until the date she was fired, there was simply not a single documented in her personnel file piece of evidence that showed she was a poor performer. Her assistant chief, who again works right down the hall from her and is in charge of monitoring her performance, could not recall anything that would cause her termination, any specific or discreet act. And so to stand up, he doesn't deny the chief crimes counselor from time to time. Is it correct? She does. She does. She doesn't there. There is a dispute as to whether he ever sat down with her following that performance evaluation and talk to her about any job problems or any time during the course of her lieutenancy. Didn't the chief counselor from time to time let her perform? The only time she was counseled was when she was given the performance evaluation. And then she tried to come back to them and rebut some of the points, which is allowed by the male lieutenants, and they refused to sit down with her. And during the deposition, it actually became clear that a lot of what's in that performance evaluation had no basis in fact. They said she should be marked down because she missed meetings. The fire chief testified that she actually had those excused in advance, and so it probably shouldn't have been accounted against her, but it was. The performance evaluation stated that she failed to perform job duties, yet during the deposition of both the fire chief and the assistant fire chief, they couldn't identify a single job duty that she failed to perform. And so even that one document in the record from June 2010, there's competent evidence in the record that disputes the allegations made by the department. And I also think it's very important to look at the time after that and to see that there is absolutely nothing from the date she met with the department until the date she was fired that demonstrates that she acted at all improperly or in any sort of way that would warrant a termination. The only thing that changed is that the department caught wind that she was going to be filing an EEOC charge. And she did mention things beyond her own personal complaints. Kelly Gore, the firefighter that she spoke with in the email or letter that she sent to the fire chief following up said that Lieutenant Fox told her that she was going to send a formal complaint and quote, it's on you and Jewel's behalf as well, which is another female, female firefighter. So clearly she did intend to file that and the defendants made sure she never could unless you have anything further. Thank you. Appreciate the argument of council today. And I'll ask the clerk to adjourn court for the day and we'll come down and greet council. This honorable court stands adjourned until tomorrow morning. God save the United States.
judges: G. Steven Agee, Stephanie D. Thacker, Henry E. Hudson